12-403-cv
*Sousa v. Marquez*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2012

(Argued: December 6, 2012)                          Decided: December 13, 2012)

Docket No. 12-403-cv

_____

Bryan J. Sousa,

*Plaintiff-Appellant*,

v.

Devin J. Marquez,

*Defendant-Appellee*.

_____

Before: Cabranes, Raggi, and Carney, Circuit Judges.

Plaintiff-appellant Bryan Sousa, a former employee at the Connecticut Department of Environmental Protection, claims that he failed to prevail in a prior employment-related suit because of false statements and deliberate omissions in an investigative report issued by defendant-appellee Devin J. Marquez, a staff attorney at the Connecticut Department of Administrative Services. Sousa brings this "right of access" suit against Marquez on the theory that Marquez's actions "caused the loss . . . of [his] meritorious case." *Christopher v. Harbury*, 536 U.S. 403, 414 (2002).

We reject Sousa's argument on two grounds. First, even assuming that so-called "backward looking" right-of-access claims are viable in this Circuit, such claims cannot proceed if the plaintiff, asserting that the government concealed or manipulated relevant facts, was aware of the key facts at

1

issue at the time of the earlier lawsuit. A plaintiff with knowledge of the crucial facts and an opportunity to rebut opposing evidence *does* have adequate access to a judicial remedy. Second, the District Court's opinion in the prior suit demonstrates that the Court did not rely on statements or omissions in Marquez's report, and therefore Sousa has not shown that Marquez's purported actions caused a violation of his rights.

Affirmed.

JOHN R. WILLIAMS, New Haven, CT, *for Plaintiff-Appellant Bryan J. Sousa.*

PETER M. HABERLANDT, Assistant Attorney General (Antoria D. Howard, Assistant Attorney General, *on the brief*), *for* George Jepsen, Attorney General of the State of Connecticut, Hartford, CT, *for Defendant-Appellee Devin J. Marquez.*

JOSÉ A. CABRANES, *Circuit Judge*:

The question presented is whether a suit based on a state governmental official's purported concealment or "manipulation" of relevant facts in the course of a prior civil suit can form the basis of a subsequent federal suit under 42 U.S.C. § 1983 alleging a denial of access to court where the plaintiff was aware at the time of the earlier lawsuit of the facts giving rise to his claim. We hold that "backward-looking" access-to-court claims are not cognizable when the plaintiff had knowledge of the crucial facts and an opportunity to rebut opposing evidence, because such a plaintiff necessarily had adequate access to a judicial remedy.

Plaintiff-appellant Bryan Sousa worked at the Connecticut Department of Environmental Protection ("DEP") from 1987 to 2005. During that time, Sousa alleged that he experienced threats of violence at work. His complaints led to four investigations. In August 2004, the Connecticut Department of Administrative Services ("DAS") assigned defendant-appellee Devin Marquez—a DAS staff attorney—to conduct one of these investigations. Marquez interviewed Sousa and other

2

DEP employees and then issued reports concluding that workplace violence had not occurred at DEP.

Sousa then sued various DEP employees alleging retaliation under the First Amendment, violation of the Equal Protection Clause, and various state-law tort claims. The District Court granted summary judgment in favor of the defendants in 2007, *Sousa v. Roque*, No. 3:05-cv-00822 (JCH), 2007 WL 1100318 (D. Conn. April 10, 2007), but we reversed with respect to Sousa's retaliation claim, explaining that our precedent was "at odds with the District Court's conclusion that Sousa's speech did not address a matter of public concern *solely* because he was motivated by employment grievances," *Sousa v. Roque*, 578 F.3d 164, 166 (2d Cir. 2009). On remand, the District Court adopted our suggestion that it "may wish to assume *arguendo* that Sousa's statements did touch on a matter of public concern, and proceed straight to *Pickering* balancing." *Id.* at 175 n.8 (internal quotation marks omitted). Applying the balancing test under *Pickering v. Board of Education of Township High School District 205, Will County, Illinois*, 391 U.S. 563 (1968), the District Court held that "there is no issue of material fact as to whether Sousa's 'interest in free comment is outweighed by the State's interest in the efficiency of its public services.'" *Sousa v. Roque*, 712 F. Supp. 2d 34, 46 (D. Conn. 2010) (quoting *Sousa v. Roque*, 578 F.3d at 175 n.8 (internal quotation marks omitted)). On appeal, we affirmed.[1] *See Sousa v. Roque*, 410 F. App'x 411 (2d Cir.), *cert. denied*, 132 S. Ct. 104 (2011).

In the present case—which is distinct from the previously mentioned suits—Sousa alleges that Marquez "discovered and concealed strong evidence in favor of [Sousa's] contention that workplace violence was a serious and ongoing problem at the DEP and had chosen not to interview other witnesses who would have testified to the same effect." Appellant's Br. 12. Sousa's claim relies in large part on information gleaned from Marquez's investigation notes, which Sousa

---

[1] As the District Court summarized, Sousa has filed many other claims relating to the alleged conditions at DEP. *See Sousa v. Marquez*, No. 3:07-cv-01787 (JCH), 2012 WL 3727618, at *2 (D. Conn. Jan. 4, 2012).

obtained pursuant to the Freedom of Information Act. Based on the alleged intentional omissions in Marquez's reports, Sousa claims that Marquez violated his constitutional right of access to courts. In short, he argues that Marquez's skewed findings undercut his otherwise meritorious claims.

On January 4, 2012, the District Court granted Marquez's motion for summary judgment. The Court explained that Sousa could not demonstrate a violation of his right of access because its prior decisions had relied on "Sousa's deposition and affidavit" and "Roque's Rule 56 Statement of Facts"—not on Marquez's reports. *Sousa v. Marquez*, No. 3:07-cv-01787 (JCH), 2012 WL 3727618, at *3 (D. Conn. Jan. 4, 2012). The Court stated that it was "puzzled" by Sousa's allegation because "the court's Ruling does not reference either of Marquez's reports at all." [2] *Id.*

On appeal, Sousa argues that the District Court erred by considering only its 2010 decision without also considering its 2007 decision. In particular, Sousa asserts that "the second ruling [in 2010] quoted from and relied upon the parts of the first ruling [in 2007] which had been based on the defendant's fraudulent report." Appellant's Br. 18. Sousa further argues that the District Court should not have adjudicated the present dispute at all because the judge "inevitably was in the position of deciding upon her own state of mind in deciding *Sousa v. Roque*." *Id.* at 19.

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "We review *de novo* the district court's grant of summary judgment, drawing all factual inferences in favor of the non-moving party." *Sousa v. Roque*, 578 F.3d at 169 (internal quotation marks omitted; italics supplied).

---

[2] Sousa also brought a common-law claim for spoliation of evidence. The District Court dismissed that claim without prejudice after declining to exercise supplemental jurisdiction. *See Sousa v. Marquez*, 2012 WL 3727618, at *3.

4

**A.**

Courts of Appeals have recognized two variants of right-of-access claims. *See Christopher v. Harbury*, 536 U.S. 403, 413–14 (2002). First, plaintiffs may allege that "systemic official action" frustrated their ability to file a suit. *Id.* at 413. The object of this type of suit "is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* Such suits are therefore labeled "forward-looking." *Id.* at 414 n.11. The second variant of right-of-access claims is "backward-looking access claims," *id.*, covering suits that "cannot now be tried (or tried with all material evidence), no matter what official action may be in the future," *id.* at 413–14. This may occur, for instance, if the official action "caused the loss or inadequate settlement of a meritorious case." *Id.* at 414. In either circumstance, however, "the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Id.* at 415.

Sousa argues that "the law is clear that a denial of access to courts claim under the First Amendment is viable if the official action in question 'may allegedly have caused the loss or inadequate settlement of a meritorious case.'" Appellant's Br. 17 (quoting *Harbury*, 536 U.S. at 414). Not so. The viability of backward-looking right-of-access claims is far from clear in this Circuit, and Sousa has not pointed to any decision of this Circuit recognizing such a claim. As Judge Michael W. McConnell stated shortly after the *Harbury* decision, "[t]he Supreme Court was careful *not* to endorse the validity of these backwards looking claims." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1209 (10th Cir. 2004) (emphasis supplied). Instead, the Court explicitly stated that it "assume[d], without deciding, the correctness of the [courts of appeals] decisions" recognizing a backward-looking right of access. *Harbury*, 536 U.S. at 414 n.9.

**B.**

We need not decide that issue here, however, because even if we followed other circuits in recognizing a backward-looking right of access, Sousa's claim falls well outside the scope of that purported right. Such claims, if recognized, would be available only if the governmental action caused the plaintiff's suit to be dismissed as untimely, *see, e.g., Swekel v. City of River Rouge*, 119 F.3d 1259, 1264 (6th Cir. 1997),[3] or if official misconduct was so severe as to "render[ ] hollow his right to seek redress," *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984), *overruled on other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005). This circumstance may arise, for example, if public officials withheld from the plaintiff "key facts which would form the basis of the . . . claims for redress." *Id.* But such claims are available only if a judicial remedy was "completely foreclosed" by the false statement or nondisclosure. *Broudy v. Mather*, 460 F.3d 106, 120 (D.C. Cir. 2006).

Common to these decisions is the sensible recognition that when a plaintiff in a backward-looking access suit alleges that the government concealed or manipulated relevant facts, the claim may not proceed if the plaintiff was, at the time of the earlier lawsuit, aware of the facts giving rise to his claim. *See, e.g., Chappell v. Rich*, 340 F.3d 1279, 1284 (11th Cir. 2003) (citing *Ryland v. Shapiro*, 708 F.2d 967 (5th Cir. 1983), and *Bell*, 746 F.2d 1205); *Swekel*, 119 F.3d at 1263 ("[T]he defendants did not deny [the plaintiff's] access to the courts, because [the plaintiff] had all of the relevant facts at her disposal."). That is because a plaintiff who has knowledge of the facts giving rise to his claim and an opportunity to rebut opposing evidence *does* have adequate access to a judicial remedy. If a governmental official is lying, for instance, the plaintiff can attempt to demonstrate the falsity of the official's statements through discovery and argument before the court. The point of the backward-looking right of access recognized by other circuits is to ensure that plaintiffs have that

---

[3] *Cf. Pearl v. City of Long Beach*, 296 F.3d 76, 80 n.3 (2d Cir. 2002) (pointing out that a party's fraudulent conduct can also sometimes give rise to equitable tolling of statutes of limitations).

opportunity—not to convert every instance of deception by a governmental witness into a separate federal lawsuit.

In this case, Sousa claims to have been aware of the purportedly violent conditions at DEP, and therefore he was necessarily aware of the alleged inaccuracies in Marquez's reports at the time he litigated his prior suit, even if he did not then appreciate that Marquez's distortions were (as he now claims) intentionally false or misleading. Moreover, Sousa had an opportunity to expose those inaccuracies through discovery and argument before the District Court, which of course was not bound by evidence presented or conclusions reached in Marquez's reports.

In other words, any intentionally misleading statements or omissions in Marquez's report did not foreclose Sousa's ability to present his prior case in court. Quite to the contrary. Sousa could have requested discovery with respect to the facts presented (or purportedly omitted) in Marquez's reports. *See* Fed. R. Civ. P. 56(d) (providing avenues for a nonmoving party to oppose summary judgment if "it cannot present facts essential to justify its opposition"). "The premise of our adversarial system," after all, is that "courts do not sit as self-directed boards of legal inquiry and research," but rather adjudicate legal questions based on the facts and legal arguments "presented and argued by the parties before them." *Coalition on W. Valley Nuclear Wastes v. Chu*, 592 F.3d 306, 314 (2d Cir. 2009) (internal quotation marks omitted). It is a plaintiff's ultimate responsibility to allege and then prove the factual and legal basis for his claim. If a party is aware of the basic facts undergirding his claim but fails to make his case, whether through inadequate discovery or otherwise, he may not relitigate that dispute through a denial-of-access claim.

In sum, Sousa has not shown a genuine dispute of material fact with respect to his access-to-courts claim because he has not even stated a claim upon which relief could be granted. As other courts of appeals have recognized, and as we now hold, backward-looking access claims are not

7

cognizable if the plaintiff, claiming that the government concealed or manipulated relevant facts, was aware at the time of the earlier lawsuit of the facts giving rise to his claim.

## C.

Sousa's claim also fails because he has not shown a genuine dispute of material fact with respect to an alleged injury resulting from Marquez's reports. *See Harbury*, 536 U.S. at 415 ("[T]he [access] right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court."). Sousa states in a conclusory fashion that the District Court's 2010 decision was "based on the defendant's fraudulent report," Appellant's Br. 18, and was "permeated by the view" taken in that report because of the District Court's prior decision in 2007, *id.* But at no point in his brief does Sousa demonstrate that the Court's 2010 decision relied in any way on Marquez's alleged omissions and misstatements. These sorts of conclusory allegations cannot create a material dispute of fact, *see Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010), and the District Court's 2010 opinion demonstrates that the Court did not, in fact, rely on Marquez's reports when it granted summary judgment in favor of the defendants.

Sousa further alleges that Judge Hall "inevitably was in the position of deciding upon her own state of mind in deciding *Sousa v. Roque.*" Appellant's Br. 19. But there is no reason to plumb the depths of the District Court's state of mind. Looking simply to the District Court's *written* explanation, *see Sousa v. Roque*, 712 F. Supp. 2d at 36–46, we conclude that the District Court's 2010 decision did not rely at all on Marquez's reports, and therefore Sousa has failed to show the requisite injury resulting from the reports to state a right-of-access claim.

## CONCLUSION

To summarize, we reject Sousa's argument on two grounds. First, even assuming that so-called "backward looking" right-of-access claims are viable in this Circuit, such claims are not cognizable if the plaintiff, claiming that the government concealed or manipulated relevant facts, was

8

aware at the time of the earlier lawsuit of the facts giving rise to his claim. A plaintiff with knowledge of the crucial facts and an opportunity to rebut opposing evidence *does* have adequate access to a judicial remedy. Second, the District Court's opinion in the prior suit demonstrates that the District Court did not rely on statements or omissions in Marquez's report, and therefore no reasonable factfinder could find that Marquez's purported actions denied him a right of access to the courts in violation of his federal constitutional rights.

Accordingly, the judgment of the District Court is **AFFIRMED**.